# WHEELING.

CHENOWITH *v.* COMMISSIONERS. OF RANDOLPH COUNTY.

Submitted June 13, 1885.—Decided July 3, 1885.

1. The writ of *certiorari* lies in this State from a circuit court or a judge thereof in vacation to the county court commissioners convened in special session to ascertain the result of an election. (p. 232.)

2. The said county court commissioners, after they have opened the sealed packages of ballots returned by the district commissioners, re-counted them upon the demand of opposing candidates for the same office and then again sealed up the ballots, can not under the provisions of sec. 21, chap. 155 Acts 1882 upon a subsequent demand of either of said candidates re-open the sealed packages and re-count the ballots a second time.   (p. 234.)

The opinion of the Court contains a statement of the facts of the case.

*L. D. Strader* for plaintiff in error.

*B. L. Butcher* and *J. J. Davis* for defendant in error.

SNYDER, JUDGE:

This is a writ of error to an order of the judge of the circuit court of Randolph county refusing a writ of *certiorari* upon the petition of the plaintiff in error, Z. T. Chenowith The allegations of the petition on which this court founds its decision are in effect as follows:

The petitioner and Warwick Hutton were opposing candidates for the office of Sheriff of Randolph county and voted for as such at all the voting precincts in said county at the general election held October 14, 1884; when the commissioners of the county court convened in special session, October 20, 1884, to ascertain the result of said election in said county, it was found that the poll-books and certificates of the several districts showed that said Hutton had a majority of three votes over those cast for petitioner; thereupon petitioner demanded of said court that they re-count the ballots cast in seven of said districts and then the said Hutton demanded a re-count of the ballots cast at the

two remaining districts; the court did open and recount the ballots of all the districts, and on the same day the court again sealed up the ballots of the several districts along with the original envelopes in other envelopes which were properly endorsed by the clerk of the court; it was found as the result of the re-count that petitioner had 849 votes and the said Hutton 846; on the next day, October 21, 1884, the said Hutton demanded of the court that it should again open and re-count the ballots of three of the districts and that petitioner objected, but the court overruled his objection and re-opened and re-counted the ballots of said districts and the result of this re-count, by including certain votes for Hutton which were objected to by petitioner, was 848 for Hutton and the same number for petitioner, thus producing a tie vote between them; then on the following days, to-wit, on October 22 and 23, 1884, petitioner demanded that the ballots of certain districts should be re-counted a third time and while proceeding with such re-count the court discovered that two ballots which had been voted for Hutton had been taken from one of the envelopes and two ballots for petitioner substituted therefor; upon this discovery the Court refused to consider said third re-count, and adopted as the true result the said second re-count which gave each of the candidates the same number of votes; the court then elected said Hutton to the office of sheriff and gave him a certificate of his election to said office. The prayer is that the proceedings of said county court may be supervised by writ of *certiorari*.

The statute, under which the county court is required to proceed in determining the result of an election, is in substance as follows :   The Commissioners of the county court, shall convene in special session on the fifth day after the election and the ballots, poll-books and certificate shall be placed before them for examination., "They may, if deemed necessary, require the attendance of any of the commissioners or canvassers, or other officers or persons present at the election, to answer questions under oath respecting the same and may make such other orders as shall seem proper to procure correct returns and ascertain the true result of said election in their county.   * * * * They shall, upon the demand of any

candidate voted for at such election, open and examine any one or more of the sealed packages of ballots and re-count the same, but in such case they shall seal up the same again, along with the original envelope, in another envelope, and the clerk of the court shall write his name across the seal," &c. When they have declared the result of the election they shall deposit the sealed packages of ballots with their clerk to be preserved by him for one year if there is no contest and if there be a contest until the same is decided and then they shall be destroyed. Sec. 21, ch. 155, Acts 1882, p. 498.

The next succeeding section of said Act provides, that the said courts, "under the regulations prescribed in the next preceding section, shall carefully and impartially ascertain the result of the election in their county, and in each district thereof, and make and sign as many certificates thereof as may be necessary, in the following form," &c. : (here the form is given.)

The 24th section authorizes the courts, when there is a tie vote between two candidates, to elect one of them.

It is contended by the defendant in error, that the circuit court had no jurisdiction to award the writ of *certiorari* prayed for, and that, therefore, its refusal to do so was proper and should be affirmed by this Court.

It is very true that according to the common law the writ of *certiorari* issued only from a superior court to one of inferior jurisdiction, commanding the latter to certify to the former the record or proceedings in a particular case. 4 Minor's Inst. 300.

The general rule is, that upon such writ the superior court will only inquire into errors and defects which go to the jurisdiction of the inferior court. But if the inferior tribunal proceeds in a summary manner and not according to the course of the common law, and there is no remedy by appeal or writ of error, then the superior court will consider other than jurisdictional questions. *Poe* v. *Machine Works*, 24 W. Va. 517 ; *Dryden* v. *Swinburn*, 20 *Id.* 89.

By our statute this remedy is in express terms extended to proceedings before a county court, council of a city, town or village, justice or other inferior tribunal after judgment or final order in any case, except where the circuit court has

authority to review such judgment or order on motion, or on appeal, writ of error or in some manner other than upon *certiorari.* Sec. 2, chap. 153 Acts 1882, p. 488.

The third section of said statute directs that the commissioners of the county court, the justice or the presiding officer of the inferior tribunal shall, if required, sign bills of exceptions, and " upon the hearing the circuit court shall, in addition to determining such questions as might have been determined upon *certiorari*, as the law heretofore was, review such judgment, order or proceeding of the county court, council, justice or other inferior tribunal, upon the merits, determine all questions arising on the law and evidence and render such judgment or make such order upon the whole matter as law and justice may require." And the fourth section provides that such writ may be awarded by the judge of the circuit court in vacation.

This statute greatly enlarges the remedy by *certiorari*, both as to the questions that may be reviewed by it and the inferior tribunals to which it is made to lie. Whether it is thus extended to all inferior tribunals whether executive, ministerial or judicial in their nature it is unnecessary to decide in this case, because it expressly mentions county courts and makes no exception as to whether the matters to be reviewed are judicial or merely ministerial. I think, therefore, it is plain that the writ was intended to apply to such a case as the one before us.

In *Brazie* v. *The Fayette County Commissioners*, 25 W. Va. 213, this Court, in construing the statute now in question said: "The duties and powers of commissioners are mainly ministerial, but are *quasi* judicial so far as it is their duty to determine whether the papers laid before them by the clerk, and purporting to be returns, were in fact such, were genuine, intelligible and substantially authenticated as required by law. To the extent here indicated, a judgment in the nature of a judicial function is necessarily exercised; for, if it were otherwise, the whole law is inoperative in respect to the powers of the county commissioners to do any act whatever. But aside from these limited judicial functions, the commissioners possess no discretionary powers, their duties are purely ministerial."

In the case just cited this Court held, that a writ of prohibition lay from the circuit court to the county commissioners of a county, assembled in special session to ascertain the result of an election. It seems to me, therefore, there can be no question in this State that the writ of *certiorari* will lie from the circuit court to the county commissioners so assembled. In view of this decision and our statute law, it is unnecessary to enquire what the law is on this subject in other States having no such statute.

The county commissioners thus acting in special session, are an inferior tribunal proceding in a summary manner and not according to the course of the common law. This tribunal is a creature of, and its proceedings are governed entirely by the statute; and no provision is made for a review of its action or proceedings upon motion, appeal, writ of error, or *supersedeas*. If its proceedings can not be reviewed by *certiorari*, then they can not be reviewed at all. It is true, there may be an appeal from a final order of the county court in cases of contested elections. Sec. 47, ch. 5, Acts of 1881. But that would be in another and a different case. It would not be an appeal from the action of the county commissioners convened as a returning board, but from the judgment of a tribunal exercising very different powers and in a new and different case or proceeding.

Upon the merits of this case as alleged in the petition there can be, it seems to me, but little room for controversy. The statute declares that the commissioners "shall, upon the demand of any candidate voted for at such election, open and examine any one or more of the sealed packages of ballots and recount the same," &c. This language reasonably construed can not mean that the candidates voted for have the right to demand a re-count of the ballots not only once but an indefinite number of times. If a candidate may rightfully demand a re-count a second time he may do so a third time or oftener. Unless the statute means that there shall be but a single re-count, its language furnishes no limit to the number of re-counts that may be demanded by the same candidate; and it might be made the instrument of defeating the result of an election. Such a destructive and unreasonable effect could not have been intended or even contemplated by

the legislature.    The object of the statute was, evidently, to furnish the means of revising and correcting any mistakes or blunders of the district commissioners by the county commissioners.    When this is done to the satisfaction of the commissioners, and the ballots re-sealed and endorsed the right to demand a further re-count by candidates at whose instance or in whose presence one re-count has been made ought not to be allowed.    The impropriety of permitting an indefinite number of re-counts is illustrated by the fraud attempted in this case.    It is necessary that there should be an end to the controversy in such matters and that the rule by which the end is to be arrived at should be plain and simple.

It is not necessary to decide in this case whether or not each candidate shall have the right to demand a re-count. The reasonable and practicable rule would seem to preclude such right after there had been a re-count at the instance of some other candidate at the same election.    It is known by all the candidates on what day the commissioners meet and if any one or more of them desire to have a re-count of the ballots in his case, notice can be given to the commissioners, all can be present and the re-count made for each candidate at one and the same time, and thus finally end the matter.    According to the allegation of the petition in the case at bar the first re-count was made at the instance of both the candidates for sheriff, the re-count was carefully made and the ballots' again sealed up and endorsed without objection by either.    It is, therefore, plain that under any fair interpretation of the statute, neither of these candidates had a right to demand a second re-count of the ballots after they had been thus fairly counted at their instance and again sealed up.

In *Perry* v. *Horn*, 21 W. Va. 732, this Court, under chap. 172, Acts 1872-3, which provides that, if an appellant or plaintiff in error should fail, within six months after his case has been docketed in the court of appeals, to deposit with the clerk a sufficient sum to pay for printing the record, his appeal shall be dismissed, " but it may be renewed at any time within five years from the date of the judgment or decree appealed from," held that but one appeal, after such dismissal, can be allowed by the court of appeals.    That statute is to some extent analogous to the one under consideration and the con-

struction given to it is in harmony with the conclusion arrived at in this case.

There are other irregularities alleged, which are not important in the view taken by this Court, and they have not been considered.

The record before us, seems to contain all that could have been brought up by the return of the county court if the writ had been issued by the circuit court. But as the writ was refused by that court, we can only regard the petition. What the record in the county court is, can only be made to appear from the return to the writ duly certified. The statute, as we have seen, makes bills of exceptions and other matters part of the record to be returned and considered by the circuit court and requires that court upon the hearing to review the proceedings of the county commissioners "upon the merits, determine all questions arising upon the law and the evidence, and render such judgment or make such order upon the whole matter as law and justice may require." Acts 1882, p. 488.

Having decided that the facts alleged in the petition are sufficient to entitle the petitioner to a writ of *certiorari*, the order of the circuit court refusing the writ must be reversed ; and the case is remanded to that court with directions to it to award the writ of *certiorari* as prayed for, and if the record of the county court commissioners referred to in the petition sustains the allegations of the petitioner to the extent indicated in this opinion, then, said court shall make such order as the county commissioners should have made in the premises by declaring that the petitioner is duly elected to the office of sheriff of Randolph county, &c.

REVERSED.    REMANDED.