# CHARLESTON.

## ALDERSON *v.* COMMISSIONERS.

Submitted December 5, 1888.—Decided December 5, 1888.

1. COUNTY-COMMISSIONERS—BOARD OF CANVASSERS—CIRCUIT COURT —*CERTIORARI*—ELECTIONS.

   The rulings of the commissioners of a county sitting as a board of canvassers after an election to ascertain the result thereof in the county are subject to review by the Circuit Court on writ of *certiorari.* (p. 640.)

2. COUNTY-COMMISSIONERS — BOARD OF CANVASSERS—ELECTIONS— CANDIDATES—BILL OF EXCEPTIONS.

   Any candidate voted for at said election has the right by himself or attorney to be present at the count of the votes and request the commissioners to give him bills of exceptions to their rulings against him; and he thus becomes a party to the proceedings and has the right to have the rulings of such commissioners reviewed on *certiorari.* (p. 641 *et seq.*)

3. COUNTY-COMMISSIONERS — BOARD OF CANVASSERS—ELECTIONS— CERTIFICATE OF ELECTION.

   Although the whole matter may be reopened by the tribunal, which may try a contest for an office, yet the person really elected has the right to have the certificate of election given to him by the canvassers or proper evidence of the correct number of votes he received, to be presented to the officer having the right and by law required to give the certificate. (p. 645.)

4. COUNTY-COMMISSIONERS—BOARD OF CANVASSERS—BILL OF EXCEPTIONS—*MANDAMUS.*

   If the commissioners of the county sitting as a board of canvassers after an election refuse to sign bills of exceptions to their ruling, when requested to do so by a candidate voted for at the election, they will be required by *mandamus* to settle and sign such bills of exceptions. ,(p. 646.)

5. COUNTY-COMMISSIONERS—BOARD OF CANVASSERS—*MANDAMUS.*

   When in such case a petition praying a *mandamus* is filed, it is right and proper for the court issuing the rule or alternative writ of *mandamus* to issue an order inhibiting the commissioners until the further order of the court from finally adjourning or certifying the result of the election, so that the peremptory *mandamus*, if issued, will be effective; and, when the court is informed that

80

the *mandamus* has been obeyed, the inhibition should be wholly removed.   (p. 648.)

*J. W. St. Clair, Brown & Jackson* and *E. B. Knight* for petitioner.

*J. A. Hutchinson, A. Burlew, S. C. Burdett, A. G. Tibbetts* and *W. S. Edwards* for respondents.

JOHNSON, PRESIDENT :

This is an application for a *mandamus* to compel the commissioners of Kanawha county sitting as a board of canvassers in special session under the statute after the election held on the 6th day of November, 1888, to settle and sign bills of exceptions to their rulings.   The petitioner, John D. Alderson, on the 1st day of December inst., presented to this Court, and asked to have filed the following petition.

*To the Hon. Judges of the Supreme Court of Appeals of West Virginia* :   Your petitioner, John D. Alderson, respectfully states that at the general election held throughout the State of West Virginia on the 6th day of November, 1888, he was the candidate and nominee of that political organization known as the ' Democratic Party ' for representative in the congress of the United States for the Third congressional district of the State of West Virginia, and was voted for at said election for said office in every county in said Third congressional district ; that said Third congressional district is composed of sixteen counties, of which the county of Kanawha is one ;   that, pursuant to law, John S. Cunningham, W. B. Calderwood, and S. S. Staunton, the commissioners of the County Conrt of said Kanawha county, met in special session on the 12th day of November, 1888,—that being the fifth day after the said election, Sunday excepted,—for the purpose of ascertaining the result of said election · in said county.   And thereafter, to-wit, on the —— day of November, 1888, your petitioner demanded of the commissioners of said county a recount of the ballots in said county for representative in congress, as aforesaid.   That during the progress of said recount certain actions and rulings were had and made by said commissioners, which were then and there excepted to and objected to by your petitioner, and it then and there became and was nec-

essary for your petitioner to have settled and signed by said commissioners a bill of exceptions, setting forth the rulings and actions excepted to and objected to by your petitioner as aforesaid, which said rulings and actions are specially set forth in the paper writing, in the form of a bill of exceptions hereto attached, and marked 'Exhibit A,' and made a part of this petition. The said paper 'Exhibit A' was presented to said commissioners in special session, as aforesaid, and they were then and there required and requested by your petitioner to settle and sign said bill of exceptions, which the said commissioners then and there declined and refused to do; and said commissioners, though requested by your petitioner, further then and there refused and declined to give your petitioner any bill of exceptions whatsoever setting forth any of their said actions and rulings excepted to and objected to by your petitioner; and declined to make in any way whatever a record of their proceedings, or of any of their proceedings, in such special session as aforesaid. That when said 'Exhibit A' was presented to said commissioners, assembled in special session as aforesaid, your petitioner informed said commissioners that he intended to review their proceedings by writ of *certiorari* in the Circuit Court of Kanawha county, and requested said commissioners that they would consent not to finally adjourn, or certify the result of said vote to the governor and secretary of state, until your petitioner could prepare a bill of exceptions setting forth their action in the premises, and apply for a *mandamus* to test the question whether they were bound to settle and sign the same, and not to certify the result of said election to the governor and secretary of state until your petitioner could obtain from the Circuit Court of said county, or the judge thereof, a writ of *certiorari* to review their proceedings; but said commissioners would not so consent not to adjourn, or certify the result of said election to the governor and secretary of state; and your petitioner is informed and believes, and so charges, that it is their intention to adjourn, and certify the result of said election to the governor and secretary of state, as soon as possible, and thereby endeavor to defeat your petitioner's right to review their proceedings in the courts of this State. Your petitioner, therefore, prays this honorable court that a

rule be awarded against the said John S. Cunningham, W. B. Calderwood, and S. S. Staunton, commissioners as aforesaid, requiring them, and each of them, at some short day, to be fixed by this court, to be and appear before this court to show cause, if any they can, why a writ of *mandamus* should not issue, against them to settle and sign the said bill of exceptions; and that in the meanwhile, in aid of such *mandamus* proceedings, this Court will make an order restraining the said commissioners from finally adjourning their said special session, and from certifying to the governor and secretary of state the result of the said election in Kanawha county. And as in duty bound he will ever pray," *etc.*

The petition was sworn to. The court ordered the rule to issue as prayed for in the petition, and until the further order of the court inhibited the said commissioners " from finally adjourning their special session being held for the purpose of ascertaining the result of said election in said county, and from certifying to the Governor or Secretary of State of West Virginia the result of said election in said Kanawha county." The said rule was made returnable to the 3d day of December, 1888, at which time the defendants appeared by counsel, and on motion of defendants the rule was enlarged until the next day, when the defendants moved to quash the rule, which motion was fully argued both by counsel for the petitioner and the defendants.

This motion was based on the ground, that the said commissioners were sitting in special session under the statute for the purpose of canvassing the returns and declaring the result of the general election held in said county on the 6th day of November, 1888, and were not a judicial body not exercising nor having the power to exercise judicial functions upon any subject-matter or thing alleged or pretended in the petition; but acting solely in a ministerial capacity as a board of canvassers keeping no record of their proceedings when thus assembled, and not required by law to keep any other or further minute of their action, as such board of canvassers, than to sign a certificate stating the number of votes cast for each candidate in the county, based on the returns of such election, after such returns have been verified and made right, taking the certified returns to be correct as

made and filed in the clerk's office of the County Court of said county by the precinct officers, when such returns have been examined and tested by the said board of canvassers in the special and limited manner prescribed by law ; that the said commissioners, thus sitting in such capacity, in certifying the result of such election, enter no judgment, and make no final orders, in respect to the matters and things concerning such election; that, in such matters and in such proceedings before the said commissioners, there is no case pending between the said petitioner and any party of a civil nature, or any other matter or proceeding in which these are parties, which in any manner is reviewable by the Circuit Court of Kanawha county, by appeal, writ of error, or *supersedeas*, or by writ of *certiorari ;* and therefore the said commissioners, sitting and acting in the capacity aforesaid, are not required to make or sign bills of exceptions setting forth any rulings or orders, or certifying any evidence which they may have before them in ascertaining the true result of said election in their county.

If this position is tenable, then clearly the rule ought to be quashed ; as in such case it ought not to have issued, there being nothing alleged in the petition to justify it. The motion to quash the rule raises all the legal questions to be decided, and, if it should be quashed, the matter is at an end ; and if the motion ought to be overruled, unless the facts set up in the petition are controverted, a peremptory writ of *mandamus* will rightfully issue. This question whether under the circumstances the rule should be quashed, or, if the facts set up in the petition are true, the peremptory writ of *mandamus* should issue, must be decided almost exclusively upon a construction of our own constitution and statutes. In some States it is true that the duties of a canvassing board are wholly ministerial, and no court can review any of their rulings; but, such duties being purely ministerial, a *mandamus* will lie to compel such board to give a certificate of election to a certain candidate.

Thus it was held by the Supreme Court of Illinois, that the office of canvassers is merely ministerial, and as such will be controlled by *mandamus ;* that they are required by statute to count all the votes formally certified to them ; and

that the fact that some of the judges of election did not appear to have been properly sworn, was no objection to the validity of their return; that the certificate of an officer *de facto* is all that is required. *People* v. *Hilliard*, 29 Ill. 413. This case was decided in 1862, and the plaintiff was Mellville W. Fuller, now occupying the highest judicial office in the United States. Then he had, as he claimed, been elected a member of the General Assembly of Illinois. It appears in the record of that case, that after all the returns from the different towns, precincts and wards in the county of Cook had been received by the clerk, on the 8th day of November, 1862, the clerk, L. P. Hilliard, called to his assistance J. B. Bradwell and L. H. Davis, two justices of the peace of the county, and proceeded to open the returns and make abstracts of the votes cast for the different officers voted for at that election; and in the performance of this duty the clerk with the assistance of the justices of the peace opened the returns of the second precinct of the fourth ward in the city of Chicago, a legally established voting precinct in the sixtieth representative district, which was found in all respects to be in compliance with the statute of the State, except that the affidavits of two of the judges and the two clerks, who acted in the precinct and made the returns, and which were prefixed to the poll-books, did not have the signatures of the officers, who administered the oaths attached to the several *jurats;* that one of the judges, John Lieb, had been duly sworn before the clerk of the County Court, and his affidavit was in all respects regular; that Lieb appeared before the board of canvassers, and offered to prove, that the other judges and clerks had been duly sworn by him, after he had been sworn, and before they entered on the performance of their duties, and asked leave to put his name to the *jurats*, but the majority of the board refused to allow the proof to be made, or to permit Lieb to sign his name to the several *jurats*, and refused to count the votes so shown by the poll-books and returns to have been cast in that precinct, for the only reason that the several *jurats* did not have the signature of the officer, who administered the oath to the judges and clerks; that the returns from the precinct footed up one hundred and eighty votes for

Fuller, the same number for Brand, and fifty nine each for Gage and King, for representatives; and that the rejection of those votes would deprive the relator of the certificate of election and give it to King. In that case the prayer of the petitioner was for an alternative writ of *mandamus* against the clerk and the two justices of the peace, to show cause why a peremptory *mandamus* should not be awarded requiring them to count the votes cast in said precinct and enter the votes so cast in the abstracts of votes, and against the clerk requiring him to show cause, why said writ should not issue to compel him to certify the election of the relator as a representative in the General Assembly for the sixtieth representative district. The return showed, that the clerk had given the certificate to King.

The court by Breese, Judge said : " Upon the remaining ground of objection, that the county clerk had issued a certificate of election to another party prior to the issuing out of this writ, it is only necessary to say that it is in proof the certificate was not issued until after notice of this application for this writ. When the fact was brought home to the clerk that this application was made it would have been quite decorous and proper to pause in his action, and await the decision of the court; the more especially as by issuing the certificate to a party not entitled the right of the true claimant could be weakened thereby. The power remains to the clerk to issue the certificate to the party this court may deem entitled to it. *People* v. *Rives*, 27 Ill. 246. There are no other means known to the law by which this result can be obtained."

The court issued the peremptory writ of *mandamus.* The Supreme Court of Illinois has repeatedly held, that the functions of the board of canvassers under their statute are purely ministerial and could therefore be controlled by *mandamus.* We have held that boards of canvassers in this State by statute have conferred upon them both ministerial and judicial powers. *Brazie* v. *Commissioners*, 25 W. Va. 213; *Chenowith* v. *Commissioners*, 26 W. Va. 230; *Fleming* v. *Commissioners*, *ante*, 267.

But it is insisted here by the counsel for the commissioners, that the commissioners while sitting as a board of can-

vassers can not be controlled by the courts, and therefore they can not be compelled to sign bills of exceptions.    The Constitution (section 12, art. VIII,) declares in the most explicit terms, that " the Circuit Courts shall have the supervision and control of all proceedings before justices and other inferior tribunals, by *mandamus,* prohibition, and *certiorari.*" This certainly is a broad declaration, that in the State of West Virginia there is no tribunal, which is not subject to be legally controlled by the courts; that not even a board of canvassers of the votes after an election can escape legal responsibility.    And it would indeed be strange, if it could. The greatest duty of a republican government is to keep the ballot-box pure ; to see to it that the will of the people as expressed at an election is properly declared.    If elections are not pure, if it depends upon unscrupulous canvassers in any case uncontrolled by the courts to declare the result, as they please, without regard to the expressed will of the voters, then indeed is republican government a farce and not a reality ; and for this reason was it held, that, where such boards act without authority, usurp judicial functions, where none are conferred by statute, the courts will control them by prohibition (*Brazie* v. *Commissioners,* 25 W. Va. 213) ; and where they decide improperly and declare a wrong result, their action will be controlled by *certiorari.*    (*Cunningham* v. *Squires,* 2 W. Va. 422; *Chenowith* v. *Commissioners,* 26 W. Va. 230).

The case of *Poteet* v. *Commissioners,* 30 W. Va. 58 (3 S. E. Rep. 97) is not, as supposed by counsel, in conflict with *Chenowith* v. *Commissioners.*    There are some *dicta* in the opinion in that case, which would seem to be in conflict.    After referring to *McClure* v. *Maitland,* 24 W. Va. 561 ; *Auvil* v. *Iaeger,* Id. 583, and *McClure* v. *Mauperture,* 29 W. Va. 633 (2 S. E. Rep. 761)—where it was held in some of the cases, that the court could not review proceedings under the statute for sale of lands by the school-commissioners, they being in their character administrative, and simply a mode prescribed by the State for the sale of lands, which were here absolute property, and in the sale of which the State alone was interested, and to *Railroad Co.* v. *Board,* 28 W. Va. 264, where it was held, that this Court has no jurisdiction

to review by writ of error, a decision of the Circuit Court correcting an order of the Board of Public Works assessing and fixing the value of railroad property for taxation, because such matters were merely administrative, executive or legislative and not strictly judicial in their nature,—the judge, who delivered the opinion, said after drawing the distinction between the case then under consideration and the case of *Brazie* v. *Commissioners :*

"The controlling question in this case is, is the final judgment of the County Court, ascertaining and declaring the result of a vote on the re-location of a county-seat, a judicial act, like the judgment of such court on a contested election, or ministerial act, like the decision of the commissioners of such court sitting as a board of canvassers five days after the election ? If the latter, such judgment, for reasons we have already stated, cannot, under our Constitution, be reviewed by the Circuit Court. * * * It seems to me, for several reasons, that the language of the statute indicates clearly that this action of the County Court is judicial, and, therefore, reviewable by the Circuit Court. The action is taken at a session of the court, whereas certificates of the election of officers are given at a special meeting of the commissioners, held for the special purpose only of canvassing the votes cast at the election. These two acts are in strong contrast with each other. When acting as a board of canvassers of the votes cast for candidates for office, the commissioners make no record whatever of their conclusions, entering up nothing which bears any resemblance to a judgment, on their order-book, but simply, like other canvassing boards, make out and sign certificates showing the vote cast in the county for each candidate."

In that case it was properly held, that under the statute, which provides, that the clerk of the County Court shall lay before said court, at its next session after an election, wherein a vote has been taken on the re-location of a county-seat, the separate certificates of the precinct-commissioners of the vote on the question at each precinct, and that the court shall thereupon ascertain and declare the result of said vote and enter the same of record, that under this statute any voter of the county has a right to appear and contest the validity

of the returns and ask the court to go behind them and ascertain, what was the legal vote cast at said election for and against such re-location, and to demand, that the evidence, which he offers on this question, be heard; and, if the court refuse to permit him to be heard, he has a right to demand of said court to settle and sign a bill of exceptions, setting out the refusal of the court to permit him to be heard to introduce any evidence on the question before them. And, if the court refuse to settle and sign such bill of exceptions, the Circuit Court may by *mandamus* compel the County Court to do so and thus perfect the record, so that the action of said County Court may be reviewed on a writ of *certiorari* by the Circuit Court. There was in that case no necessity to decide, and it was not decided, that the Circuit Court could not on *certiorari* review the action of the county-commissioners sitting as a board of canvassers after an election. The *dicta* would seem to so hold, but we are not bound by them. The case of *Chenowith* v. *Commissioners*, 26 W. Va., was not referred to in the opinion, and of course could not be overruled by the *dicta* of the judge, who prepared the opinion, and who referred to *Brazie* v. *Commissioners* as an argument.

In *Chenowith* v. *Commissioners* it appeared, that the commissioners of Randolph county sitting in special session as a board of canvassers after the election in 1884 found, that the poll-books and certificates of the several districts showed, that Warwick Hutton had been elected sheriff of Randolph county by a majority of three votes over his competitor for the office, Z. T. Chenowith. Thereupon Chenowith demanded of said commissioners, that they re-count the ballots cast in seven of the districts of said county, and said Hutton demanded a re-count of the ballots cast in the two remaining districts of the county. The commissioners opened and re-counted the ballots in all the districts of the county and on the same day again sealed up the said ballots. It was found as a result of the re-count, that Chenowith had 849 votes and Hutton 846 votes. On the next day the said Hutton demanded a re-count of the ballots in three of the districts, and the said Chenowith objected, but his objection was overruled, and the commissioners re-opened and re-counted the ballots

in said three districts, and the result of this re-count by including certain votes for Hutton, which were objected to by Chenowith, was 848 for Hutton and the same number for Chenowith ; thùs producing a tie between them. The said Chenowith demanded, that the ballots of certain districts should a third time be re-counted, and the commissioners discovered, while proceeding with such re-count, that two ballots, which had been voted for Hutton had been taken from one of the envelopes, and two ballots for Chenowith substituted therefor. Upon this discovery the commissioners refused to consider said re-count and adopted as the true result the said second re-count, which gave each of the candidates the same number of votes. The commissioners then declared Hutton elected to said office of sheriff, and gave him a certificate of election. The said Chenowith presented his petition to the Circuit Court of Randolph county, setting forth the above facts, and prayed, that the proceedings of said commissioners might be supervised by *certiorari.* The court refused the prayer of the petition, and Chenowith obtained a writ of error. Snyder, Judge, delivering the opinion of the Court said :

" The general rule is, that upon *certiorari* the superior court will only inquire into errors and defects which go to the jurisdiction of the inferior court. But if the inferior tribunal proceeds in a summary manner, and not according to the course of the common-law, and there is no remedy by appeal or writ of error, then the superior court will consider other than jurisdictional questions. *Poe* v. *Machine-Works*, 24 W. Va. 517; *Dryden* v. *Swinburne*, 20 W. Va. 89. By our statute this remedy is in express terms extended to proceedings before a County Court, council of a city, town or village justice, or other inferior tribunal, after judgment or final order in any case, except where the Circuit Court has authority to review such judgment or order on motion, or an appeal, writ of error, or in some manner other than upon *certiorari.* Section 2, ch. 153, Acts 1882, p. 488. This statute greatly enlarges the remedy by *certiorari*, both as to questions that may be reviewed by it, and the inferior tribunals to which it is made to lie. Whether it is thus extended to all inferior tribunals, whether executive, ministerial, or

judicial in their nature, it is unnecessary to decide in this case, because it expressly mentions County Courts, and makes no exception as to whether the matters to be reviewed are judicial or merely ministerial."

After quoting from *Brazie* v. *Commissioners*, the Judge further said, (page 234):

" In the case just cited this Court held that a writ of prohibition lay from the Circuit Court to the county commissioners of a county, assembled in special session, to ascertain the result of an election. It seems to me, therefore, there can be no question in this State that the writ of *certiorari* will lie from the Circuit Court to the county commissioners so assembled. In view of this decision, and our statute-law, it is unnecessary to inquire what the law is on this subject in other States having no such statute. The county commissioners thus acting in special session are an inferior tribunal, proceeding in a summary manner, and not according to the course of the common-law. This tribunal is a creature of, and its proceedings are governed entirely by, the statute; and no provision is made for a review of its action or proceedings on motion, appeal, writ of error, or *supersedeas*. If its proceedings can not be reviewed by *certiorari*, they can not be reviewed at all."

The order of the Circuit Court refusing to award the writ was reversed, and the case remanded with instructions to award the writ as prayed for, and, if the allegations of the petition were sustained by the records of the commissioners to the extent indicated in the opinion, to make such order as the county-commissioners should have made by declaring the petitioner duly elected to the office of sheriff of Randolph county.

We have no disposition to recede from the position taken in that case. The boards of canvassers in the State must learn that their action is not autocratic; that they are the creatures of law and not greater than the law; that the courts will control them and keep them within the line of their duties; knowing this they will be much less apt to go astray in behalf of one party or the other, or in favor of one candidate as against another, but will according to their oaths to the best of their skill and judgment fearlessly and

faithfully discharge their most important trust in the interest of good government without respect to parties or to individuals. In their hands is reposed one of the dearest trusts of the people,—a trust, the betrayal of which will bring nothing but distrust in elections and disbelief in the capability of our people for self-government. Keep the fountain pure, and the stream will not be polluted.

But, it is said, here are no parties. Every candidate for office has the right to witness the count of the ballots and at any time, when the people's rights in him are infringed, to make himself a party to the proceedings for the purpose of correcting errors therein.

But it is said if they decide improperly, and the certificate is given to the wrong party, he has his redress by resort to a contest, and the tribunal clothed with power to hear the contest will finally decide who is elected. This is no adequate remedy either for himself or the people. He has a right to see, that the proceedings are regular and according to law, and, if entitled to it, he has the right to demand a certificate of his election. He is at least entitled to have certified the true result of the election in the county, in which the commissioners are sitting as a board of canvassers; and in the case of the election of a representative in Congress his *prima facie* right to a seat depends upon whether he receives the certificate of his election from the governor, and whether he receives that certificate depends upon the returns, as they come from the commissioners of the different counties comprising the district. Therefore it is all important, that such returns shall be correct; because, if a candidate is entitled to the certificate, he ought to have it and the advantage of the *prima facie* case and thus the advantage in a contest, if one is made. And this is sufficient to give him the right to appeal to the courts to see that his rights are protected, in the several counties where the commissioners are canvassing the votes.

In *People* v. *Hilliard*, 29 Ill., *supra*, the court said: "Though the house of representatives is the sole and exclusive judge of the qualifications of its members, this application has no reference whatever to the point of qualifications. Its sole purpose is to procure the requisite evidence

to present to that body of a *prima facie* right to a seat
in it, wholly independent of the question of qualifica-
tion."

If it is true, that the action of this inferior tribunal, the
commissioners of Kanawha county sitting as a board of
canvassers, can be reviewed on *certiorari*, and that the
proper parties are present, and the interest of the plain-
tiff in the subject is such as to entitle him to have such
action reviewed, why should that tribunal not be com-
pelled by *mandamus* to make a record of its proceedings,
so as to give the Circuit Court the opportunity to review
such action?

The statute construed in *Chenowith* v. *Commissioners, su-
pra*, is as follows: "In every case, matter or proceeding, in
which a *certiorari* might be issued, as the law heretofore
has been, and in every case, matter or proceeding before a
County Court, council of a city, town or village, justice or
other inferior tribunal, the record or proceeding may, after
a judgment or final order therein, or after any judgment or
order therein abridging the freedom of a person, be removed
by writ of *certiorari* to the Circuit Court of the county in
which such judgment was rendered or order made, except in
cases in which authority is or may be given by law to the
Circuit Court, or the judge thereof in vacation, to review
such judgment or order on motion, or on appeal, writ of
error or *supersedeas*, or in some manner other than upon
*certiorari;* but no *certiorari* shall be issued in cases of judg-
ments rendered by justices in civil actions for not exceeding
fifteen dollars, exclusive of interest and costs."

Section 3 provides: "In every case, matter, or proceeding
before a County Court, justice, council, or other inferior tribu-
nal, in which a writ of *certiorari* would lie according to the
provisions of the preceding section, the majority of the com-
missioners composing the court, or the justice, or the officer
or officers, presiding over such council, or other inferior trib-
unal, shall, upon request of either party in a civil case,
matter, or proceeding, or of the defendant in a criminal
case, matter, or proceeding, certify the evidence, if any,
which may have been heard, and sign bills of exceptions,
setting forth any rulings or orders which may not otherwise

appear of record. Such certificate of evidence and bills of exceptions shall be part of the record, and as such be removed, and returned to the Circuit Court. Upon the hearing, such Circuit Court shall, in addition to determining such questions as might have been determined upon a *certiorari* as the law heretofore was, review such judgment, order, or proceedings of the County Court, council, justice, or other inferior tribunal, upon the merits, determine all questions arising on the law and the evidence, and render such judgment or make such order upon the whole matter as law and justice may require."

Under this statute it was the duty of the inferior tribunal, the board of canvassers, at the request of the petitioner to certify evidence and sign bills of exceptions setting forth its rulings or orders, so that their action affecting him might on *certiorari* be reviewed by the Circuit Court. It is true, as insisted by counsel for respondents, that they do not, unless requested, keep a minute of their rulings, but it is not true, as they contend, that they may not be required to do so. They are so required, when requested by a proper party to do so. We can not, of course, say what said bills of exceptions should contain, or whether they should show, that the inferior tribunal erred in its rulings; that is for the Circuit Court on hearing the *certiorari* to decide, should such writ be granted, subject to review by this Court.

Whether the act declaring, that, if the commissioners and clerks at any voting place are not sworn, the vote of that precinct shall not be counted, is constitutional or otherwise, will not and can not be properly decided here. It may arise and be decided by the Circuit Court on the hearing of the *certiorari*, if one is granted. That question was argued in *Halstead* v. *Rader*, 27 W. Va. 806, and it was insisted, that the act was unconstitutional, because the constitution guaranties every qualified citizen the right to vote, which would amount to nothing, if the vote were not counted, when the voter himself is not at fault; and on the other hand it was insisted, the act was constitutional, because it was a wholesome regulation in the interest of pure elections. The question was not decided, because the notice of contest was fatally defective, so that the question did not arise. It is clear to us, that the said com-

missioners were in duty bound to settle and sign proper bills of exceptions to their ruling, and, refusing, *mandamus* according to all the authorities is the proper means of compelling them to do so. *Douglass* v. *Loomis*, 5 W. Va. 542; *Dryden* v. *Swinburne*, 20 W. Va. 90; *Poteet* v. *Commissioners*, 30 W. Va. 58, 3 S. E. Rep. 97.

But it is also objected that the Circuit Court ought to have been applied to and not this Court, as this Court has a rule forbidding an application to it, unless certain facts appear. For the reasons stated in *Fleming* v. *Commissioners*, *supra*, p. 616, enough appears to show the propriety of making the application to this Court. For the foregoing reasons the motion to quash the rule is overruled.

Thereupon the defendants tendered a plea in abatement, setting up the same reasons, as were urged in support of the motion to quash the rule. The court refused to permit the plea to be filed. The defendants then tendered their answer, which was filed, and all issues of fact were waived by the parties, and by consent of the defendants a peremptory writ of *mandamus* was ordered to issue, requiring defendants to settle and sign such bill or bills of exceptions in the matter of the re-count of the votes in said Kanawha county at the general election held in said county on the 6th day of November, 1888, as may be presented to said commissioners touching any of the rulings and orders theretofore made or to be hereafter made in the progress of said proceedings, including the ascertainment of the final result of said election. Said bills of exceptions are to be settled in the manner prescribed in the order of this Court made on the 29th day of June, 1887, in the cause of *Poteet* v. *Commissioners*.

On the 15th day of December, 1888, it appearing to the court, that the writ of *mandamus* had been fully obeyed, the inhibition preventing the commissioners from finally adjourning and certifying the result of the election was wholly removed. It was objected that this Court had no right to issue such restraining order. When in such a case a petition praying a *mandamus* is filed, it is right and proper for the court issuing the rule or alternative writ of *mandamus* to issue an order inhibiting the commissioners until the further order of the court from finally adjourning or certifying

the result of the election, so that the peremptory *mandamus* will be effective; and, when the court is informed, that the *mandamus* has been obeyed, the inhibition should be wholly removed.