# CHARLESTON.

Dunlevy v. County Court of Marshall Co. *et al.*

Submitted February 10, 1900—Decided March 24, 1900.

| | |
|---|---|
| 47 | 513 |
| d49 | 263 |
| 49 | 264 |
| 49 | 271 |
| 49 | 572 |
| 49 | 573 |
| 49 | 574 |
| 49 | 575 |
| 49 | 577 |
| | |
| 47 | 513 |
| 53 | 277 |
| 53 | 291 |
| | |
| 47 | 513 |
| 55 | 409 |
| 55 | 420 |
| 55 | 421 |
| | |
| 47 | 513 |
| f65 | 233 |

1. ELECTION-LAW—*Canvassers—Ballots—Intention.*

   Under the present election law of this State, the duties of the board of canvassers in recounting the ballots are purely ministerial, and not judicial, and it is its legal duty to count all ballots or parts of ballots where the intention of the voter appears from the face of the ballots, though not marked or erased in the plain manner directed in the statute, and to reject all ballots or parts of ballots where such intention does not appear from the face of the ballots. If, from the face of his ballot, the intention of the voter is apparent as to his choice of candidates for any office, his vote should be counted as to such office, although his intention as to other candidates for other offices be nonascertainable, and the ballot invalid as to them. (pp. 514-515.)

2. CANVASSING-BOARD—*Record—Ministerial.*

   It is the ministerial duty of the board of canvassers to make a careful record of every ballot rejected by it, with the reasons therefor, and the identification of such ballot as a part of such record. (p. 518.)

3. ELECTION-OFFICERS—*Mandamus.*

   While *mandamus* is the proper legal and efficacious remedy provided by statute for the purpose of compelling the election officers to discharge their duties in conformity with the law, when such officers, in violation of their ministerial duties, assume the exercise of judicial functions, *certiorari* may be resorted to for the purpose of reviewing their erroneous rulings, although *mandamus* would furnish more speedy, less expensive, and more adequate relief. (p. 520).

Error to Circuit Court, Marshall County.

Action by J. W. Dunlevy against the county court of Marshall County and S. R. Davis. Judgment for plaintiff, and defendants bring error.

*Affirmed.*

J. B. McClure, for plaintiffs in error.

J. Alex. Ewing, J. C. Simpson and C. C. Newman, for defendant in error.

DENT, JUDGE:

At the November election, 1898, J. W. Dunlevy and S. R. Davis were opposing candidates for the office of county commissioner of the county of Marshall. The precinct returns showed that Dunlevy received two thousand and sixty-six votes and Davis one thousand nine hundred and twenty-five votes, thus electing Dunlevy by a majority over Davis of one hundred and forty-one votes. Davis demanded of the board of canvassers a recount, which they proceeded to make, and, by rejecting numerous votes, they reduced Dunlevy's vote to one thousand eight hundred and one, and Davis' vote to one thousand eight hundred and four, thus giving Davis a majority of three. The canvassers failed to make a record of each vote rejected as required by statute, and refused to sign bills of exceptions to their rulings, until compelled to do so by *mandamus*. Dunlevy then applied to the circuit court for a *certiorari*, which was awarded and the court, on a hearing thereof, found that the board of canvassers had illegally refused to count a large number of ballots cast for Dunlevy, more than sufficient to change the result of the election, reversed the finding of the board, and remanded the case to them, with directions to reconvene, and include in their count the illegally rejected ballots, and declare the result of the election accordingly. From this order the board and S. R. Davis obtained from a judge of this Court a writ of error. The original ballots, which were before and acted upon by the circuit court, the plaintiffs in error have not seen fit to bring here, but they produce along with the record copies of the faces of such ballots for the inspection of this Court. The ballots are the primary record evidence of every election from which the precinct's returns are made up, and by which such returns must be sustained or disproved. And when, on a recount, any of such ballots are rejected, it is the duty of the board of canvassers to make a record thereof, showing the reasons for such rejection, and clearly identifying such rejected ballots for future le-

gal investigation; and the same rule applies to doubtful or objectionable ballots included in the recount by the board. If the record is properly made up, no bills of exceptions are necessary to make such ballots a part thereof, nor does the law contemplate such necessity, but the ballots, by the mere identification therein, become a part thereof from the fact that they are already the record evidence of the election. Section 34, chapter 3, Code, as amended in chapter 25, Acts 1893, relates to the proper preparation of ballots, and the manner in which they shall be marked to indicate the intention of the voter as to the various candidates to be voted for; being in this latter respect merely directory. It provides, among other things, that "all candidates or persons voted for by any voter shall be those whose names are printed or written as aforesaid thereon; and every other ballot on the same sheet shall be defaced by drawing one or more lines with pen and ink or indelible pencil from the top to the bottom thereof, or across the heading thereof or in any other way indicating that the same has not been voted by the voter. But if more than one of said ballots have nothing on them to indicate which of them was not so voted, then neither of them shall be counted." And in section 66, same chapter, it is provided that "any ballot or part of a ballot from which it is impossible to determine the elector's choice of candidates shall not be counted as to the candidate or candidates affected thereby." These provisions, construed together, show that it was the purpose of the legislature that the ballots were not to be received or rejected as a whole, but as to each office they were to be regarded and acted upon separately, so that, if the intention of the voter was apparent as to any of the candidates for any of the various offices voted for, his vote was to be counted for such office or candidate, although his intention as to all the other offices and candidates might be nonascertainable from the markings of his ballot; and his ballot as a whole was to be rejected only when there was nothing thereon to indicate the voter's choice as to any of the candidates. Each office is thereby made separate and independent of all the others, and the intention of the voter as to one is no indication of his intention as to the others, but each must stand or fall on its own

merits. It is, therefore, the legal duty of the board of canvassers, on recounting the ballots, to give effect to the separate intention of the voter as to each of the offices for which there are candidates, and count the vote in so far as it is valid, and reject it only in so far as it is invalid. The law seeks to secure to every elector the right to vote, and the board of canvassers can neither disfranchise him nor vote for him. If he loses his vote, it must be from his failure to indicate by his ballot his intentions as to any office. If he makes his intention appear, his vote must be counted. The board has neither the discretion to reject a legal nor to cast an illegal vote. They are bound by the ballots, and, as they indicate, the votes must be counted as to each office separately. There were fifty-three bills of exceptions taken to the rulings of the board of canvassers, which might have been dispensed with had the board performed its duties, and kept its record legally. It is unnecessary to review them all, as it is plainly apparent that the board, without regard to the law, illegally changed the result of the election. The board, in rejecting numerous ballots, gave no heed to the intention of the voter as to the particular office about which the recount was being had, but seized on most any technical objection for the purpose of rejecting a ballot, as follows, to wit, a number of ballots were rejected because the intention of the voter as to choice for congress was not indicated, although he plainly indicated his intention as to county commissioner. A number of others were rejected for the reason that the voter had failed to scratch off any of the party headings, although he plainly indicated his intention as to county commissioner. A number of others were rejected because the voter scratched out the name of S. R. Davis, and inserted in the same space the name of J. W. Dunlevy, instead of writing the latter's name in the blank space provided. A number of others were rejected for the reason that the voter indicated by a cross above the Democratic, Prohibition, and People's Party tickets that he intended to vote the Republican ticket, and then scratched out the name of S. R. Davis on the Republican ticket and inserted in lieu thereof the name of J. W. Dunlevy. A number of others were rejected for the reason that the voter, by a cross above the Prohibi-

tion, People's Party, and Republican tickets indicated his intention to vote the Democratic ticket. The circuit court, on an inspection of the ballots, found errors in the recount against J. W. Dunlevy to the number of two hundred and thirty-nine votes, and against S. R. Davis to the number of one hundred and twenty-four votes, making an actual majority in favor of the former of one hundred and twelve votes. These original ballots are not before us, nor do the plaintiffs in error point out specifically any errors committed by the circuit court in the examination of such ballots. The assignments of error are of such a general nature as to afford the Court no light. Nor is the brief of counsel much more specific. The petition for *certiorari*, certainly shows that the petitioner was elected on the face of the returns, and that on the recount enough legal votes were rejected by the board to change the result against him. This was certainly error by which he was prejudiced, and of which he had a right to complain. The ballots, when properly identified, are the record evidence of the election, and could be removed by *certiorari* into the circuit court for inspection. They are not before this Court for the reason that no error is specified as to them, and this Court is not called upon to examine them. If there was error with regard to them, it was the duty of the plaintiffs in error to point out the same, and bring them up for inspection. Error must affirmatively be made to appear in this Court. For the first time the objection is made that the ballots are not properly indorsed by the poll clerks. This simply refers to the copies produced in this Court. No such question was raised in the circuit court, and therefore we must presume that the original ballots were properly indorsed; and, if the plaintiffs in error placed reliance on such objection, they should have produced the original ballots here to show that such objection is tenable, and not raised it for the first time for the purpose of taking advantage of a mere clerical oversight in no wise affecting the case as.it was presented to the circuit court. It is further objected that the circuit court, instead of responding to the various bills of exceptions, took up the rejected ballots as certified by the board of canvassers, and indicated which of them should be counted and which

should be rejected. This is a sufficient answer to the various bills of exceptions, as it determines specifically and definitely the matter in issue between the parties, and left nothing for the board of canvassers to do but to sum up and declare the true result of the election, instead of substituting its will for that of the people. Nor does it make any difference that S. R. Davis proceeded to qualify at once as commissioner. The declaration of the result of the election being erroneous and illegal, and being reversed and annulled by the circuit court, his qualification fell therewith, and his apparent right to the office was vacated thereby. A board of canvassers cannot make law, but they must obey it as it is made for them. *Alderson* v. *Commissioners*, 32 W. Va. 454, (9 S. E. 863).

Is *certiorari* a proper remedy? It is certainly inadequate. It being a mere appellate process, subject to the law's delays, the term of office may expire before relief can be afforded. In this case almost two years has elapsed, and the end is not yet. Under the statute, the counting of ballots is purely a ministerial act. The face of the ballot must show the recorded intention of the voter as to any office. If this appears, it must be counted as to such office. If it does not, it must be rejected. The facts being set at rest by the ballot, the law allows the board of canvassers no discretion. They must obey the behests of the law, and *mandamus*, both at common law and now by virtue of the statute, is the only adequate remedy to compel the board to discharge its legal duties in this respect. Section 89, chapter 25, Acts 1893; *Hebb* v. *Cayton*, 45 W. Va. 578, (32 S. E. 187); *Marcum* v. *Commissioners*, 42 W. Va. 263, (26 S. E. 281), 36 L. R. A. 296; High, Extr. Rem. § 56. When the board assumes to exercise a legal discretion which it does not possess, its action may be controlled by prohibition. *Brown* v. *Board*, 45 W. Va. 826, (32 S. E. 168). And in such cases, at common law, *certiorari* would lie as an appellate process, not because the board is a *quasi* judicial tribunal, but because, being a ministerial body, it undertakes to exercise judicial functions. The common law supplies the milder process of *certiorari*, when adequate, in place of the harsher remedies of *mandamus* and prohibition. If it did not lie at common law, *certiorari*

could not be resorted to under section 2, chapter 110, Code, for the reason that the election statute furnishes an ample remedy by *mandamus* to review and control the illegal actions of the election officers. *Chenowith* v. *Commissioners*, 26 W. Va. 230; *Alderson* v. *Commissioners*, 31 W. Va. 633, (8 S. E. 274). Prior to the enaction of the present election law, it had been establish by the decisions of this Court—*Brazie* v. *Commissioners*, 25 W. Va. 213; *Chenowith* v. *Commissioners, supra; Fleming* v. *Commissioners*, 31 W. Va. 609, (8 S. E. 267); and *Alderson* v. *Commissioners*, 31 W. Va. 633, (8 S. E. 274)—that election officers had conferred upon them both ministerial and judicial powers, and that *certiorari* and not *mandamus*, was the proper remedy to review their proceedings. In other states election officers are regarded as mere ministerial officers, and they are controlled in the discharge of their duties by the writ of *mandamus*. *People* v. *Hilliard*, 29 Ill. 413; *People* v. *Rives*, 27 Ill. 246. When the legislature re-enacted the election law of this State in 1891, it undoubtedly intended to take away all judicial functions from the election officers, and by careful provision make all their duties purely ministerial, subject to the control of the writ of *mandamus*. Section 89, chapter 3, Code. This purpose was rendered more apparent by amendment in 1893, when the duties of the election officers were more carefully defined. and it was provided that "a *mandamus* shall lie from the supreme court of appeals, or any one of the judges thereof in vacation, returnable before said court, to compel any officer herein to do and perform legally any duty herein required of him." In short, the court is to construe the law, and compel such officers to discharge their duties in accordance therewith. Such officers are allowed no judicial discretion. They must ascertain the facts, and discharge their duties strictly in conformity with the law, and a departure therefrom in any particular subjects them to the writ of *mandamus*. The writ of *certiorari* is thereby rendered wholly unnecessary, as a far better and more effective remedy is afforded by *mandamus*. Nevertheless, it is not entirely taken away, but the same rule would apply to its use in summary proceedings as applies to a writ of error in proceedings of record. *Railroad Co.*

v. *Paull*, 39 W. Va. 142, (19 S. E. 551); *Dryden* v. *Swinburn*, 20 W. Va. 89; *Id.*, 15 W. Va. 234; *Swinburn* v. *Smith*, 15 W. Va. 483. This is that the remedies of *mandamus* and *certiorari* would be concurrent with the right to the litigant to make choice between them. A right choice in all election controversies arising under the election law would render the writ of *certiorari* obsolete in such cases, for the reason that *certiorari* is subject to all the law's delays, and is inadequate, and highly expensive, compared with the more direct and efficacious remedy afforded by *mandamus.* The judgment of the circuit court is affirmed.

*Affirmed.*