# WHEELING.

## ALDERSON v. COMMISSIONERS.

*(GREEN, JUDGE, absent.)

Submitted June 18, 1889.—Decided June 23, 1889.

1. APPEAL—CERTIORARI—CIRCUIT COURT.

Upon a writ of *certiorari* used as an appellate proceeding to bring to the Circuit Court for review a judgment or order of an inferior tribunal, the Circuit Court should decide all matters of law and fact, including those on the merits fairly arising on the record, either affirming such judgment or order, or reversing or modifying it, and should render such judgment, as the inferior tribunal should have rendered, or remand it to that tribunal, where further proceedings are necessary with distinct decision on the points involved in the latter event.

2. APPEAL—CIRCUIT COURT.

The Circuit Court, where such further proceedings are necessary can not retain and try the cause, but must remand it to the inferior tribunal for such proceedings.

3. APPEAL—COUNTY COMMISSIONERS—ELECTIONS.

County commissioners in canvassing returns of an election for congress on a re-count sign various exceptions for alleged errors taken by one of the candidates voted for, and the count is completed and result declared. The party excepting obtains a *certiorari* to review the action of commissioners, and the Circuit Court reverses it, and remands the matter to them, with directions to again perform the work of canvassing the returns. *Held*, that commissioners are not *functus officio*, but are yet competent to canvass the returns in compliance with the order of the Circuit Court.

*J. W. St. Clair, Brown & Jackson* and *O. Johnson* for plain-in error.

*A. Burlew* and *J. A. Hutchinson* for defendants in error

BRANNON, JUDGE:

John D. Alderson presented his petition to the Circuit Court of Kanawha county representing, that at the election on the 6th of November, 1888, he had received a large number of votes in all the counties of the Third District of this

*On account of illness.

State for representive in the Congress of the United States, and that James H. McGinnis also received a large number of votes for the same position; that on the 12th of November, 1888, the commissioners of the County Court of Kanawha county met to ascertain the result of said election in that county; that the certificates from the precincts showed, that Alderson received 3,329 votes, and McGinnis 4,658 votes; that he, Alderson, demanded a re-count of the ballots cast, and that said commissioners made such re-count, and the result of the re-count was for Alderson 3,341 votes, for McGinnis 4,638 votes, and that such re-count would elect Alderson; that said commissioners refused to accept the result as shown by their re-count and decided, that they would accept the result of the re-count of all the precincts except Alum Creek, St. Albans, Charleston, Coalburg and Lewiston, and as to them they would accept the returns as originally certified as to Alum Creek, St. Albans, and Charleston, and would reject all the ballots cast at Coalburg and Lewiston, and declared that in said county Alderson received 3,122 votes, and McGinnis 4,468 votes; that said commissioners examined witnesses as to the conduct of the election, and the swearing in of the officers of election, and refused said Alderson leave to cross-examine them or introduce other evidence on the subject, and that witnesses were examined tending to show, that ballots had been tampered with and altered at Charleston and St. Albans, and he was refused leave to introduce evidence to the contrary; that he moved the commissioners to declare the result as shown by the re-count, except Lewiston, Alum Creek and Fields Creek precincts, and to exclude them for certain causes in the record stated, and his motion was overruled; that he moved to declare, if Alum Creek should be counted, to take the result on the re-count of it, and also the re-count of Charleston, which motion the court overruled; that he moved the court to include the result on the re-count at Coalburg and St. Albans, which motion the court overruled; that he moved the court to exclude all ballots at West End and Fields Creek precincts, which motion the court overruled. Said petition gives the number of votes at the various precincts for each candidate on the original returns and the re-count.

It is not necessary here to give more of the contents of said petition or record, as this statement will show their nature. The writ of *certiorari* was awarded, and a judgment was rendered by the Circuit Court reversing the action of the county commissioners, and remanding the cause to them, with instructions, that they meet in special session "for the purpose of doing and performing the business, for which the commissioners of the said County Court were convened at the court-house of said county of Kanawha, on the 12th day of November, 1888, in relation to the election of representative in the Congress of the United States for the Third Congressional District of this State, among other things." Alderson moved the court to retain and try the cause and not remand it to the County Court, but his motion was overruled. He obtained a writ of error and complains, that the court remanded instead of retaining and trying the cause.

The first question is, did the Circuit Court err, as plaintiff contends in argument, in failing to decide all the points of error arising on the record and in sending the case back to the county commissioners without giving specific rulings or instructions to them on the points, so that the parties and commissioners might have the benefit of the decision of the Circuit Court as to them? There has been much difference of opinion as to the scope of the hearing of a writ of *certiorari*, as will be seen in the opinion in *Dryden* v. *Swinburn*, 15 W. Va. 234, and *Dryden* v. *Swinburn*, 20 W. Va. 89, some courts holding, that the writ touched only questions of jurisdiction, power or authority of inferior courts, or the regularity of its proceedings; others holding that all questions of law arising on the record could be passed on. The evident leaning of the courts of late has been to widen the field of this valuable remedial writ. I do not elaborate this matter, as I regard it settled by former decisions of this Court. In *Dryden* v. *Swinburn*, Judge GREEN, speaking for the court says:

"The cases above cited, while they all agree that a trial *de novo* cannot be had in a superior court in a case brought before it by *certiorari*, yet they by no means agree as to the judgment, which may be rendered. They agree, that, if no

error is found in the proceedings in the inferior court, its judgment should be affirmed; but they differ on the judgment to be rendered, if the judgment of the inferior court is found erroneous,—some holding in such a case all that the superior court can do is to render a judgment reversing the judgment of the inferior court; and others holding it may go further, and render such judgment as the inferior court ought to have done; * * * that is, they may modify the judgment of the inferior court, or reverse it *in toto*, and enter up a new judgment, or remand it to the inferior court for trial. This latter practice would certainly seem to be far the most convenient, especially where the inferior court is a court of record, but there are highly respectable authorities which deny the superior court the right, unless so authorized by statute, to do more than simply to reverse or annul the judgment of the inferior court; but the weight of authority is in favor of the power of the superior court, in a case brought before it by *certiorari*, to do more than simply to affirm or reverse the judgment of the inferior tribunal, and is in favor of the authority of the superior court to affirm the judgment below, or to reverse it, and remand it to the inferior court, or to modify its judgment, and, in short, to enter up such judgment as the court below ought to have done as in cases brought up by writ of error."

Judge GREEN then expressess it as his opinion, that the court may, if it reverse, remand the cause to be further proceeded in or enter such judgment as the court below ought to have entered, and that the record alone is to be the basis of judgment in either case. Point 7 of the syllabus in that case is: "In all cases of *certiorari*, when used as an appellate proceeding, the superior court has a right to affirm the judgment of the inferior court, or to set aside and annull it, and enter up such judgment as the inferior court ought to have done, or remand the cause to it, as in a case brought up on writ of error." In *Dryden* v. *Swinburn*, 20 W. Va. 89, it was decided that, "a case being brought before a Circuit Court by a writ of *certiorari* for review, it should review, not only jurisdictional questions and questions of irregularity in the proceedings of the inferior tribunal also, but all questions of law, and all actions alleged to be based on erroneous prin-

ciples, or taken in the absence of all evidence to justify such action."

It is therefore the duty of the inferior tribunal to make part of its record, if asked, all the facts necessary to enable the court to see upon what principles of law it has based its action, or whether there was any evidence to justify its action, and all the rulings and decisions of all law questions in the case, and all facts necessary to the proper understanding of all such rulings and decisions of such inferior tribunal. I do not think from the language of the syllabus in that case, that it was meant that under *certiorari* the superior court could weigh all the evidence on the merits, and find all the facts involved in the evidence as a jury, and reverse on that ground; and I am confirmed in this by a clause in the opinion in that case where, after saying that the practice on *certiorari* and writs of error should be similar, the Court seems to qualify that expression by saying :

"The errors which, in this state, are corrected on a writ of error are generally errors of law ; and the juries and inferior tribunals are, as a general rule, held to be the sole judges of the weight of evidence, and their decisions on an issue of fact is rarely reversed or interfered with by the appellate court on a writ of error. It is true that the power in this State exists to grant a new trial on a writ of error, because the verdict is so contrary to the weight of evidence as to shock the conscience ; and the appellate court in this State probably exercises this power thus, as it were, in a qualified manner, to review what seems to be a question of fact to an extent to which it would not be exercised in some states, those states, or some at least of them, never reviewing a question of fact on a writ of error." In *Poe* v. *Machine Works*, 24 W. Va. 517, the syllabus is : "The general rule is that upon *certiorari* to an inferior court the court awarding the writ will only inquire into errors and defects which go to the jurisdiction of the court below. But in this State, if the inferior tribunal proceeds in a summary manner, and not according to the course of the common law, and there is no remedy by appeal or writ of error, then the courts will consider other than jurisdictional questions." This case does not decide how far beyond jurisdictional questions the court will go. By these

decisions it has been held that on *certiorari* all questions of jurisdiction or regularity of proceeding in the inferior court could be decided, and also all questions of law arising on the record. But it has not been held that all the facts of the case involved in the evidence could be decided; that the superior court could take the place of a jury or the inferior tribunal, and weigh the evidence, and find and determine from it, whether a proper finding of the facts had been made in the court below on the merits. Certainly it may be said to be doubtful, whether our courts have gone so far. So much for the decisions in this State.

As expressing the law elsewhere and, I think in this State too, I quote section 4, tit. "Certiorari," 3 Amer. and Eng. Cyclop. Law, 62, sustained by authorities of many states: "When its scope is not enlarged by statute, *certiorari* lies only to correct errors in law, and not to review the evidence. According to the better view, however, it is proper to inquire whether there was any evidence to establish some essential fact, and also as to the rulings below upon the admission of alleged incompetent evidence, where no other and competent evidence was introduced tending to prove a necessary finding. But the record of an inferior court or other tribunal of matters in its jurisdiction can not be disputed by other evidence, nor its finding of facts, when supported by any competent evidence." Thus stood the law up to the passage of chapter 153, Acts 1882; Code 1887, p. 742.

*Certiorari* was not wide enough in its efficacy as a remedial writ; certainly, at least, it can be said there was doubt as to its scope. It was to cover a field for the correction of errors not covered by the writ of error or appeal. Why should it not afford in its field of operation the same relief against erroneous finding on the evidence, as would be afforded by a writ of error on a motion for a new trial, on the ground that the finding was without sufficient evidence or contrary to the evidence? To give it such efficiency, to remove all doubt as to its reach, that act was passed. It gives the writ in every case, matter or proceeding in which a *certiorari* might be issued as the law theretofore had been, and in every case, matter, or proceeding before a County Court, council of a city town, or village, justice, or other inferior tribunal. It pro-

vides, that "upon the hearing, the Circuit Court shall in addition to determining such questions, as might have been determined upon a *certiorari*, as the law heretofore was, review such judgment, order or proceedings of the County Court, council, justice, or other inferior tribunal upon the merits, determine all questions arising on the law and evidence, and render such judgment or make such order upon the whole matter, as law and justice may require."

Therefore, under the decisions of this Court, and the additional scope given the writ of *certiorari* by said act of 1882, a Circuit Court should decide every point on the law and evidence, law or fact, arising on the record before it, and render such judgment, as the inferior tribunal should have rendered, or remand the case to it, when further proceedings before it are necessary.   It should in its judgment particularly and specifically decide on every point involved in the record, and make distinct for the guidance and direction of the inferior tribunal its decision on the several points by way of instructions or directions to it, so that the inferior tribunal may understand just what the law of those points is, and be able to conform in its further proceedings to such decision. This is important in practice, in order to avoid the same errors, and prevent further litigation, as without such guidance the inferior tribunal might simply repeat the same errors.

It is admitted by counsel for plaintiff, that a portion of the errors suggested were decided in his favor,—those committed by the commissioner's in refusing him the right to cross-examine witnesses introduced by the commissioners touching the administration or non-administration of the oath to officers of election, and refusing him right to introduce evidence; for the Circuit Court reversed the action of the commissioners, and pointedly instructed them to allow either of the parties to cross-examine any witness and to introduce witnesses and to appear by counsel or in person.

As to other questions, they were involved in or dependent on evidence,—as, for instance, whether the officers of election were sworn; whether the ballots had been tampered with and altered;—on which evidence offered by Alderson had been excluded.   What that evidence would have shown, if it had been admitted, the Circuit Court could not see.

Without it a full decision of the case could not be had.
The Circuit Court held, that its refusal was error against Alderson's right sufficient to reverse the judgment of the
County Court and call for a new trial.

As to the question of the constitutionality of the act excluding precincts, where officers are not sworn, which, it is
claimed, the court should have decided : if the court had
decided the act constitutional, as under the then state of the
case the Circuit Court might have decided, it would have
excluded certain precincts,—Coalburg, for instance,—and included others,—Fields Creek, for instance;—but Alderson
had offered evidence to show, that the officers at Coalburg
were in fact sworn, and that at Fields Creek they were not.
If the court had decided the act invalid, it would have been
deciding a moot question ; for perhaps the evidence would
show no such question existed.   But as to this constitutional
question it is settled law, that out of respect to that high department of the government,—the law-making power so
directly representing the popular will,—the courts will not
even approach the question, whether its acts are valid under
the constitution, unless there is no escape from it.  The state
of the case must command the decision.  The courts will not
decide it, when it is a moot question, when, at last, when the
evidence is finally in, the question may not arise.   Cooley,
Const. Lim. 163.

We do not see, that the Circuit Court has omitted to decide any question, which it was proper to decide in the state
of the case before it.   It went as far as it was called on to
go in the condition of the record.   If the Circuit Court could
not decide these matters, this Court can not.   Even if there
had been questions in the record, which the court ought to
have decided but did not, this Court would likely not do so;
as it decides, only after that court has performed its functions, and does not act, until that court has completed its
function.  *Armstrong* v. *Grafton*, 23 W. Va. 50.

Another question is:. Should the Circuit Court have retained the case, and itself tried it and declared the result of
the election after reversing the action of the commissioners?
We think not.   As above stated, until the act of 1882, there
was no law to authorize a Circuit Court under *certiorari* to

weigh evidence and pass on the merits, though the evidence. may have been incorporated into the record, and it was only to give *certiorari* the additional scope, so as to allow the court to pass on the merits under the whole evidence, that this act was passed. That was the evil to be remedied in the writ of *certiorari* by that act. It was to give *certiorari* in its field the same efficiency as a writ of error possessed in its appropriate field ; to let the court "review" the case on the law and evidence, as it was before the lower tribunal, in order to determine, whether that tribunal had done injustice. It was not the purpose of the act to give a trial *de novo* in the Circuit Court. The act does not contain words to plainly convey that meaning. It says the Circuit Court shall "review" the judgment, not re-try the case; the word "review" seeming to mean, that the Circuit Court should go over again just what the lower court had considered. It does not say, that new evidence may be heard. To give the construction to the statute, that in every case, where a judgment or order of an inferior tribunal is reversed, the Circuit Court must retain and try the case *de novo*, would be productive of great inconvenience. In *Dryden* v. *Swinburn*, 15 W. Va. 235, it was held, that the Circuit Court could not retain for trial any case brought before it by *certiorari* to the judgment of the County Court ; the twenty second section of chapter 17, Acts 1872–73, directing the retention of cases in the Circuit Court applying only to cases brought before it by appeal, writ of error or *supersedeas*, Judge GREEN saying that was the only law allowing a retention. It seems to me that decides this matter ; for no statute has been cited—none is known to me —to call for such retention but the act of 1882, and we hold that it does not. The contention, that the Circuit Court had no jurisdiction to review by *certiorari* the action of the commissioners, as canvassers of the returns of elections is met by the decisions in *Chenowith* v. *Commissioners*, 26 W. Va. 230, and *Alderson* v. *Commissioners, supra p.* —, (8 S. E. Rep. 274, decided Dec. 5, 1888.)

It is argued, that the commissioners having once performed the duty assigned to them by law and having declared the result have no power to correct their errors, and that the Circuit Court could not remand the matter to them. The

commissioners are public officers of fixed term, who act ministerially as such in performance of a duty cast upon them by law,—the canvass of election returns. They begin the canvass and complete it; but they perform this duty erroneously, as is held by a court exercising a lawful jurisdiction to review their proceeding, and it sets their action aside and remands it back to them with the mandate to perform again the work for the correction of defects in their former action, and it is said they are *functus officio,* and can not obey this lawful mandate. They have begun this legal transaction but have not completed it and can not though ordered by a legal tribunal to do so. The very statement of the proposition is to me its own refutation. I regard the body continuous, and its work an entire thing, and that it is bound to complete its work, and the function is never performed, until the act is completed. The judgment is affirmed.

AFFIRMED.