## CHARLESTON.

### Cobb *v*. Ches. & Ohio R'y Co.

Submitted January 28, 1891.—Decided March 11, 1891.

CIRCUIT COURT—COUNTY COURT—WRIT OF ERROR—CONSTITUTION.
A Circuit Court or judge had power on the 9th of December, 1880, to award a writ of error to a judgment of a County Court rendered before the adoption in October, 1880, of the amended Article VIII of the constitution, notwithstanding such amendment operated to abolish the County Court as it had existed before such amendment.

*J. H. Ferguson* and *J. E. Chilton* for plaintiff in error, cited Code, c. 39, s. 10; 9 W. Va. 703; 15 Pet. 449; Acts 1872–3, c. 15, s. 16; Id. c. 17, s. 22; 22 W. Va. 106; Acts 1879, c. 49, s. 8; 3 W. Va. 566; 7 W. Va. 232; 2 Ror. R'ds 960; 6 Am. Rep. 345; 33 W. Va. 433; 31 W. Va. 220.

*Brown & Jackson* and *J. W. Kennedy* for defendant in error, cited 15 W. Va. 208; 17 W. Va. 879; Const. Art. VIII, s. 24.

BRANNON, JUDGE:

On the 16th of September, 1880, Lewis Cobb recovered in the County Court of Kanawha county a judgment against the Chesapeake & Ohio Railway Company for seven hundred dollars; and on the 9th day of December, 1880, said company obtained from the Circuit Court of Kanawha county a writ of error to said judgment; and on the 11th of July, 1888, the Circuit Court dismissed said writ of error as improvidently allowed; and to its judgment of dismissal said railway company obtained the writ of error which we now decide.

Between the date of the judgment of the County Court and the date of the writ of error allowed by the Circuit judge the amendment of article VIII of the constitution was adopted, abolishing the County Court as it existed prior to the amendment, and substituting another tribunal, under the name of the "County Court;" and for Cobb it is contended that the Circuit Court had no authority to grant such writ of error, and that its judgment dismissing it is therefore right.

We reach a different conclusion. It is clear that the original judgment of the County Court being final remained firm and stable, notwithstanding the court which rendered it was afterwards abolished, no matter where the record showing its rendition might be deposited. Though without some provision for the execution of such judgment no execution could issue because of the destruction of the court which rendered it; yet an action of debt could be maintained upon it, and on a judgment therein execution would issue.

The basis of the argument against the jurisdiction of the Circuit Court to grant a writ of error to the judgment of the County Court is section 25 of amended Article VIII, of the Constitution, which is as follows:

"All actions, suits, and proceedings, not embraced in the preceding section, pending in the County Court when this article takes effect, together with the records and papers pertaining to such actions, suits, and proceedings, as have already been disposed of by said court, shall be transmitted to and filed with the clerk of the Circuit Court of the county, to which office all process outstanding at the time this article goes into operation shall be returned; and said clerk shall have the same powers and perform the same duties, in relation to such records, papers, and proceedings, as were vested in and required of the clerk of the County Court on the day before this article shall take effect. All such actions, suits and proceedings, so pending as aforesaid, shall be docketed, proceeded in, tried, heard, and determined, in all respects, by the Circuit Court, as if said suits and proceedings had originated in said court."

It is said that said section provides for the prosecution

of suits pending and undetermined in the County Court at the date of its abolition, and for execution on its judgments, but does not provide for appeals; and that there can be no appeal without a statute allowing it, and no statute has provided for such appeal; and therefore the case of a judgment of the former County Court is, as to appellate proceedings on it, a *casus omissus*.

But we think there is statutory provision therefor. Section 16, c. 15, Acts 1872–73, provides: "Appeals may be allowed, and writs of errors and *supersedeas* awarded, to judgments, decrees, and orders of the County Courts by the Circuit Courts, or the judges thereof in vacation." It is true this act was passed while the old County Court was in existence. Now, is it possible that this statute became a dead letter on the adoption of the amendment? What produced its death? No express repeal did this; and shall we repeal it by a far-fetched implication, and thus utterly abolish all remedy against erroneous final judgments of a County Court, simply because of the abolition of the court, when we know that many judgments existed which might call for appellate action? Rather shall we not reject mere implication in that direction, and if any implication is necessary in the presence of the plain letter of the statute, apply it to uphold the appellate remedy as continuing still after the adoption of the amendment?

Now, as to suits undetermined and pending in the County Court upon its abolition, in order that they might not perish from the death of that court, and before any legislation could come to their relief, it was necssary that there should be in the amendment a provision to save them and provide for their further prosecution; and so as to executions on these final judgments; but, as to appeals and writs of error and *supersedeas* on such judgments, there was no need for such clause, for the statute quoted and also, I think, section 9, found in chapter 17, Acts 1872–73, p. 59, expressly gave the Circuit Court power to award such writs. It adds force to this view to say that in case, on such writ of error, the judgment should be reversed, and re-trial were necessary, there was no want of a court for such re-trial, for the statute-law provided expressly:

"When any judgment, decree, or order of a County Court is reversed or affirmed, the cause shall not be remanded to said court for further proceedings, but shall be retained in the Circuit Court, and there proceeded in, unless by consent of parties, or for good cause shown, the appellate court direct otherwise." Acts 1872–73, c. 17, p. 63. These statutes thus afford ample appellate relief and ample scope for further proceedings rendered necessary thereby; and they work in harmony, are plain in language, and plainly and expressly apply to the subject, "County Court judgments," and why we shall throw them away, and create a *casus omissus*, to the destruction of remedial agencies, I can not see.

It is suggested—merely suggested—in the brief for appellee that said section 25 of the amendment made judgments of County Courts judgments of the Circuit Courts to be acted on as judgments of Circuit Courts, and thus writs of error to them must go from the Court of Appeals. Turn back to said section 25, above quoted, and we shall see that, as to suits pending in the County Courts, and the records and papers pertaining to them, and as to records and papers pertaining to suits already disposed of by these courts, the clerk of the Circuit Court is vested with the same powers as the clerk of the County Court. So far they are not made records and papers of the Circuit Court, only the clerk is vested with certain powers. The provision further on, that all actions, suits and proceedings pending in County Courts should be docketed, proceeded in, tried, heard and determined in all respects by the Circuit Court, as if they had originated in such court, does make them suits in that court. But this clause relates to cases not determined, which needed such provision, not to judgments already rendered. Where is there any language which makes judgments of the County Court judgments of the Circuit Court? There they stood, as firm as if the court had not been abolished; with express provision made for executing process, and with statutory provision for appellate process; and there was no need to make them, to all intents, judgments of the Circuit Court.

It is again said that, when the County Court ceased to

exist, its clerk could not certify the record of a judgment, and, as the transcript of the judgment of the County Court is certified by the clerk of that court, it was not a certified record. There is no date showing when it was made. It may have been, likely was, made before the functions of the clerk ceased.

It is urged here for appellant that the amendment did not execute itself, and *ex proprio vigore* transfer the records to the Circuit Court clerk instantly upon the day of its ratification, but that it needed legislation to effect this; and it was not until the act passed in 1881 (Code 1887, c. 39, § 10) that such legislation was passed, and the writ of error was allowed before its passage. Now, as to this, I hold that, if that section of the amendment, as to the transmission of the records to the clerk of the Circuit Court, be self-executing, yet it only gave the clerk powers as to their custody, and to issue executing process and did not further make them judgments of the Circuit Court. Under the views above stated, it is unnecessary to examine the question whether said amendment was self-executing.

We reverse the judgment dismissing the writ of error, and send the case back to the Circuit Court in order that it may proceed further upon the writ of error granted by the judge thereof to the said judgment of the County Court, as this Court can not act on the merits of that writ in advance of action by the Circuit Court. *Armstrong* v. *Grafton*, 23 W. Va. 50; *Aldersnn* v. *Commissioners*, 32 W. Va. 461 (9 S. E. Rep. 863); also because, if there should be a reversal and re-trial, it must take place in that court.

REVERSED. REMANDED.