# CHARLESTON.

HEBB v. COUNTY COURT OF TUCKER COUNTY *et al.*

Decided November 24, 1900.

[The original opinion in this case is reported in Vol. 48, page 279. This case was affirmed by a divided Court. The dissenting opinions of Judges BRANNON and DENT not being in the possession of the Reporter at the time the original opinion was published, are inserted here.]

BRANNON, JUDGE:

I hold that the former decision of this Court was a final judgment in this case. It awarded a final or peremptory *mandamus* to compel a recount of the ballots. What was left to the circuit court to do was simply an execution of the mandate of this Court; that is, to issue an alias *mandamus,* as the day fixed by the circuit court judgment had passed, requiring the canvassers to simply recount the ballots, leaving nothing to be decided by the circuit court. The act required of the circuit court and vancassers was simply ministerial. Cayton had no right to make any further defense against having a recount; no right to file a petition. If he had had right to make a further defense, I would concede that the court could not refuse such defense on the theory that Cayton was in contempt. He, being a defendant, even if guilty of contempt, could not be denied a defense, as might be done had he been plaintiff. *Hovey v. Elliott,* 167 U. S. 409, 17 Sup. Ct. 841, 42 L. Ed. 215.

But he had no right to make defense. His petition was not presented until two days after the Court finally acted in the case by the award of the *mandamus.* The case was ended. This is another reason against his defense. He showed no reason for opening the judgment. That petition set up that Hebb should have filed formal petition for the alias *mandamus.* Not so, because the court had finally determined his right to it, and it could be awarded on mere motion, being simply an execution of the mandate of this Court. No new facts were necessary to be presented. *In re Sanford,* 160 U. S. 247. Cayton's petition

further averred that two of the commissioners in office when the case began were no longer officers, and that two new men had come into office, and there was no evidence in the record of who they were, and either that the proceeding could not continue against them, or they should have had notice. Those commissioners are not complaining of this action of the circuit court. Cayton only sets it up,—a technical point to frustrate the decision of this Court, and deny Hebb justice. The court could take judicial notice that they were commissioners. This *mandamus* is not against those people individually, but against the canvassing board, a continuous legal body, though its members change, and, as the recount must be made by those new members, it was proper that the writ should go against them. The Supreme Court of the United States has drawn the line of distinction that, where the writ is to go against the individual as an officer, expiration of his office ends the case; but where it is against a municipal corporation, or other corporation, or legal board having continuous existence, expiration of office makes no difference, and the *mandamus* goes on against successors. "Those who are members of the board at the time when the board is required to act will be the parties to whom the court will look for the performance of what is demanded." *Board* v. *Sellew,* 99 U. S. 627, 25 L. Ed. 335. See, also, *Stock Co.* v. *Smith,* 165 U. S. 28, 17 Sup. Ct. 225, 41 L. Ed. 621; *Thompson* v. *U. S.,* 103 U. S. 480, 26 L. Ed. 521; High, Extr. Rem. s. 38; Merrill, Mand. s. 238; *People* v. *Supervisors of Barnett Tp.,* 100 Ill. 332; *Alderson* v. *Commissioners,* 32 W. Va. 454, (9 S. E. 863). This feature of the petition afforded no defense. If the case had not reached final judgment; if it had been upon a *mandamus nisi,* and to be further heard,—those new commissioners should have been cited. But they could make no defense, and why cite them, the *mandamus* awarded being final and peremptory? The petition further averred that a kinsman of Hebb's had entered the clerk's office to tamper with the ballots, and probably did so. That would come up on the recount in ascertaining the legal force of the ballots, but could not be considered in this case. So the petitioner showed no defense, even if a defense had been admissible.

It is said that the circuit court has never acted on that petition, nor passed upon the question, and yet has to do so before

the case is appealable to this Court. The record says that Cayton presented his petition, and asked to have it filed, and that Hebb objected; "whereupon, upon inspection of said petition and the record in this cause, court refused the petition, assigning as its reason that Cayton was in contempt by reason of having qualified as clerk." The court considered that petition in connection with the record, and refused it, but gave the wrong reason for its refusal. The true reasons are that it came after final judgment, and that it presented no legal defense, and also that no defense whatever was admissible. *In re Potts,* 166 U. S. 263, 17 Sup. Ct. 520, 41 L. Ed. 994.

Cayton had a memorandum entered of a bill of exceptions, but none appears in the record. Is this petition part of the record? It seems not, in the absence of such bill. If it is not, he can take no benefit from that petition; but I have considered it as if a part of the record. It is said that the *mandamus* awarded is against the county court in its corporate capacity, but should have been against the board of canvassers. This is purely technical objection; but it is untenable, in the face of the record, which awards a peremptory *mandamus* "against the county court of Tucker County, and W. H. Dasher, A. B. Flanagan, and A. L. Helmick, the commissioners composing the same, commanding them to assemble at the court house of Tucker County on the 20th day of March, 1899, in their corporate capacity as such county court and board of canvassers, and to then and there recount all the ballots," etc. Now, the same men compose the county court and board of canvassers, and this order of the circuit court plainly commands the persons named as commissioners to canvass the ballots as canvassers, and calling them the county court is surplusage, as the law requires them to act in the specified act of recounting as canvassers. We look at substance, and not at mere technicality.

McWHORTER, JUDGE, concurs herein, and we affirm the action of the circuit court.

DENT, JUDGE:

The order appealed from in this case is as follows: "This day came Wm. M. Cayton, by his attorneys, and presented to the court another petition, and asked to have the same filed in this

cause, to the filing of which C. M. Hebb objected; whereupon, upon inspection of said petition and the record in this cause, and it being suggested to the court by counsel for the said Hebb and shown by the said petition that the said Cayton is in contempt of this court in having qualified as clerk of the county court of Tucker County in disobedience to the restraining order inhibiting him from so qualifying, heretofore entered therein, the court, therefore, refuses to entertain the motion of the said Cayton to file said petition until he has purged himself of the said contempt." There was another order included in the writ of error, but it being a final order of *mandamus* directed by this Court, is nonappealable, unless from errors apparent on the face thereof after motion made to correct the same, overruled by the lower court.

From the face of the foregoing order, it is perfectly apparent that the only thing the circuit court did was to refuse to hear the petitioner as *personam non cum gratis,* for the reason that he had violated the order of injunction awarded, restraining and inhibiting him from qualifying under his certificate of election until a recount of the ballots could be had as commanded, and required him to first purge himself or cleanse his hands, not by affidavit, but by surrendering his office under his qualification. If the circuit court had the power to award the injunction, it had the right to refuse to hear him. 2 High Inj. s. 1463. If it was *coram non judice,* and the court thus exceeded its authority, it had no right to refuse him a hearing, though in contempt of its order. *Id.* s. 1425. The law is there stated: "If the court has no jurisdiction over the matter involved, or if it has exceeded its powers by granting an injunction in a matter beyond its jurisdiction, its injunction will be treated as absolutely void, and the defendants cannot in such case be published for contempt for its alleged violation." That the circuit court did so exceed its powers was settled by this Court in the case of *Swinburn v. Smith,* 15 W. Va. 484. The third and fourth points in the syllabus are as follows, to-wit: "(3) The circuit court judge, having, in addition to this writ of error and *supersedeas,* issued an injunction prohibiting the person who had been declared elected to the office, and who had duly qualified, from exercising the duties of the office, or interfering with the person who had formerly held the office in the performance of its duties, held,

this order of injunction was issued without jurisdiction or authority, and is null and void, and this Court will prohibit all proceedings on it or in the case in which it was granted. (4) If a party is elected to a county office, and receives a certificate of his election from the proper officers, and duly and legally qualifies, he is entitled to hold the office pending a contest for the office by another party." In this case the certificate was issued, and the injunction was not to qualify pending a recount of the vote, being an assumption of jurisdiction clearly beyond the powers of the court, binding on no one. The court no doubt acted in good faith, under the mistaken belief that the qualification of Cayton would injure Hebb: This, however, was not true; for if the recount changed the result of the election, and Hebb received a certificate thereof, Cayton's certificate and qualification would be thereby rendered null and void. Cayton, not being in contempt, was denied the right of a hearing by the court. This section 17, article III, of the Constitution guarantees to him, wherein it provides that "the courts of this State shall be open, and every person for an injury done to him in his person, property or reputation shall have remedy by due course of law; and justice shall be administered without sale, denial or delay."

The object of these proceedings is to take from Cayton an office to which he had been declared elected, and in which he holds a qualified property, in the defense of which he is entitled to be heard. Yet the circuit court denied him a hearing for a groundless reason. And the affirmative moiety of this Court to whom he appeals for redress and the restoration of his constitutional rights closes the doors to him, and turns him away without a remedy. The excuse given is that, although the circuit court may have done wrong not to hear him, yet we have examined his petition on the merits, and find out that it presents no legal defense to the issuance of the *mandamus,* and therefore the circuit court's action in refusing to hear him was harmless error. It was simply a bad reason given for a righteous determination. This is a violation of one of the most firmly established rules of this Court, not to consider matters which have not been adjudicated by the circuit court, as JUDGE BRANNON says in *Kisler* v. *Lapham,* 46 W. Va. 293, (33 S. E. 289), "this being an appellate court, which passes only on matters previously passed

upon by the circuit court." *State* v. *Reymann* (decided at this term) 37 S. E. 591. This rule is limited to points of error in the case, and not legal reason or excuses given for the court's determination. The court may be right in one, and wrong in the other. *Eclipse Oil Co.* v. *South Penn Oil Co.* (W. Va.) 34 S. E. 926. The true point of error in this case was the refusal to entertain the petitioner's motion to be permitted to file his petition, and postponing it until he purged himself of his alleged contempt, and not a rejection of his petition on consideration thereof. The court did not consider the petition, and so announces in its order, and gives the reason for not so doing. It is conceded that, if the petition sets up nothing worthy to be heard, the petitioner is not injured, except in being deprived of the right always heretofore accorded litigants by this Court to have the points of law relied upon by him first considered and passed upon by the circuit court. It being a writ issued in obedience to the mandate of this Court, petitioner could not urge anything in opposition thereto existing prior to such mandate, but he could move to quash the writ by reason of errors apparent on the face thereof, or move to vacate, set aside, and annul the order of the circuit court as a material departure from the mandate of this Court. This the petitioner sought to do for two reasons: (1) That the writ was awarded against the county court in its corporate capacity; (2) that, instead of being awarded against those composing the board of canvassers who canvassed the election in 1896, it was awarded against the present members of the county court, not then members thereof. These things are said to be mere technicalities, without substance. The character of an animal is usually determined according to the side of the fence from which it is seen. From one side, it may appear a dangerous bull; from the other, a harmless calf.

As to the first of these objections, this Court has decided that there is a vast difference between the county court acting in its corporate capacity and the members thereof acting as a board of canvassers of an election. In the late case of *Brown* v. *County Court*, 45 W. Va. 829, (32 S. E. 165), JUDGE BRANNON, distinguishing between the two bodies, says: "Though these bodies are composed of the same persons,—county commissioners,—yet they are in law not the same, but distinct, bodies. The board of canvassers is merely a body to canvass the returns of elections for

public officers, acting simply on the certificates sent from voting
precincts by certain officers holding the election and recounting
ballots when demand is made.   They may send for those precinct
officers to ascertain the true result, but they hear no contest
judicially, no evidence of fraud in the election.  They act min-
isterially only.  If any candidate claims that the election is frau-
dulent or in any wise illegal, or that the ballots are unlawfully
counted against him or not counted for him, he must get relief
by contest, as provided in the statute.  *Brazie* v. *Commissioners,*
25 W. Va. 213.   But a county court, as such canvassing the
returns of an election upon a vote upon a county-seat relocation,
is an entirely differenet tribunal, having wider functions.   It
canvasses the returns upon the certificates, can recount ballots,
hear evidence of fraud and illegality, and do what in the case
of candidates for office can be done by that court in hearing a
contest.  *Poteet* v. *Commissioners,* 30 W. Va. 58, (3 S. E. 97)."
In the case of *Brown* v. *Board,* 45 W. Va. 826, (32 S. E. 168),
this Court prohibited the board of canvassers, although made up
of the same members, from assuming the functions of the county
court.   The county court in its corporate capacity hears all con-
tests between candidates for county officers.   It can hear evi-
dence of fraud and illegality, and determine to whom the office
rightfully belongs. The order complained of commands the county
court, in its dual capacity as a county court and board of can-
vassers, to recount the ballots, and declare the result, and issue
the certificate to the party entitled thereto.   It directs a copy of
the order to be served on the county, and, further, it awards costs
against the county court.   Yet we are told that this should all
be treated as surplusage.   Will the county court so treat it?   It
was not liable for costs in its corporate capacity.   Why should
the taxpayers of the county be compelled to pay costs because the
board of canvassers have neglected to discharge their duties?
Should the county court obey the mandate, and examine into
and declare the result of the election, could Cayton successfully
object to its doing so, with this order staring him in the face
as *res adjudicata* until he in some lawful manner got rid of it?
This Court, having jurisdiction of the matter, should have cor-
rected the order of the circuit court, so as to make it conform to
its mandate, and not affirm in its present shape, and thereby
render it *res adjudicata* in any further proceedings thereunder.

In doing so, it confers upon the court a jurisdiction it does not possess, and from which there is no escape hereafter in this case, unless the order of the circuit court, though affirmed by this Court, can be treated as a nullity. The decisions of this Court, though wrong, are *res adjudicata.* The most serious question, however, not yet decided *inter partes* by the circuit court, and yet affirmed by this Court, is as to whether the *mandamus* should go against the commissioners composing the present county court or the board of canvassers of the election of 1896. The affirmative moiety of this Court holds that the canvassing board is a continuous legal body, though its members change, and that the recount must be made by the present commissioners of the county court, although they had nothing to do with the election of 1896. This is a very violent assumption in the face of our election laws, which provide for no transmissible duties from election officers to their successors, or those on whom the duty devolves, to hold, canvass, and declare the result of the next election. Each election is a thing separate to itself, and, after the officers of such election have performed their duties in relation thereto, they are *functus officio.* Such is the condition of the ballot commissioners, the commissioners of the election, and the poll clerks, and why not of the canvassing board? The fact that they are commissioners of the county court, on whom the duty of canvassing the returns of the election devolves, does not continue them in office as a perpetual board of election canvassers. But after they have canvassed the returns, and declared the result in a proper manner, they become *functus officio,* and they are no longer election officers for such election, although if they continue commissioners they will be of the next. The board of canvassers are not a permanent or continuing body, but merely a temporary arrangement, for ascertaining and determining the result of an election. As such, the members thereof are purely and distinctly election officers, all of whom become *functus officio* when the result thereof is finally and legally ascertained and declared. And they must continue as such, having once entered upon the discharge of the duties thereof, until they have fully performed them. Part performance is no performance. When however, the board has fully performed its duties in accordance with law, it is *functus officio* (*Rosenthal* v. *Board,* 50 Kan. 129, 32 Pac. 129, 19 L. R. A. 157; *Rice* v. *Same, Id.* 149, 32 Pac. 134;

*Clark* v. *Buchanan,* 2 Minn. 346 [Gil. 298]) ; but not until it has so discharged its duties. (*State* v. *County Judge of Marshall Co.,* 7 Iowa, 186; *State* v. *Bailey, 1d.* 390; *State* v. *Trimbell,* 12 Wash. 440, 41 Pac. 183; *Hagerty* v. *Arnold,* 13 Kan. 367; *Alderson* v. *Commissioners,* 32 W. Va. 454, 9 S. E. 863). Under the election laws of this State, it is the duty of the county commissioners, who are made a canvassing board for the purpose, to canvass the returns, recount the ballots when demanded, and carefully and impartially record the same, and then sign the record and issue certificates. When they have done this in a legal manner, they are *functus officio.* Having entered upon, they must perform the whole duty required of them, and they cannot in any manner evade or transmit it to their successors. To enforce these duties, the legislature has provided, in section 89, chapter 3, Code, ample remedies; among others, that "a *mandamus* shall lie from the supreme court of appeals or any one of the judges thereof in vacation returnable before said Court to compel any officer herein to do and perform legally any duty herein required of him." The willful omission, evasion, or neglect of such duties is made a felony; the whole tenor of the enactment being to make all duties required of the election officers personal duties, so as to prevent any escape in any manner from discharging them legally, and until they are so discharged to prevent the officers from becoming *functus officio.* There is no provision in any way made for their transmission to successors. Nor should it be so. All matters connected with an election should be at once promptly determined, and not hang on from year to year, as the present case has done. Had Mr. Hebb taken advantage of the remedies provided by the statute, he could have had his case disposed of within twenty or thirty days, instead of having it drag along for four years. It is impossible for the new members of the county court, acting as a board of canvassers, to make the record and issue the certificate required by those who actually performed the duties of canvassers at such election. They are required to certify that they have "carefully and impartially examined the returns of the election held in said county in each district thereof." Can these commissioners legally perform this duty? The question answers itself. They know nothing about it, and to compel them to do so is to compel them to certify to a falsehood. They can recount the votes if

they have not been destroyed by fire or otherwise, as directed
under section 68, chapter 3, Code, or if they have not been tam-
pered with or made into a mouse nest; but how can they certify
that they have carefully and impartially examined the returns
any more than they can certify that they fairly and impartially
held the election? The only persons who can possibly comply
with the law in a legal manner are the members of the board who
actually canvassed the election, and who, not having performed
their duties in a legal manner, are not yet *functus officio* as such
canvassers, although they have long since ceased to be members
of the county court. As is said in *Hoke* v. *Henderson,* 15 N. C.
1, and approved in *Edwards* v. *U. S.,* 103 U. S. 476, 26 L. Ed.
316: "Every man is obliged, upon a general principle, after
entering upon his office, to discharge the duties of it while he
continues in office; and he cannot lay it down until the public,
or those to whom the authority is confided, are satisfied that
the office is in a proper state to be left, and the officer dis-
charged." This rule should especially apply with force to elec-
tion officers, and this Court, on whom is imposed the duty of
seeing that they do and perform their duties legally, should not
permit them to escape simply because their terms of office as
county commissioners have expired. As long as their duties as
election officers are not legally performed, they should not be
discharged as such officers, but should be held to the strict per-
formance thereof. It is a duty every citizen, when called
upon, owes to the public, the neglect of which should not be
tolerated. The cases relied upon by the affirmative moiety of
the court, other than their own decision, are none of them appli-
cable to election officers. In *Board* v. *Sellew,* 99 U. S. 627, 25
L. Ed. 335, a corporate county board was involved, equivalent to
our county court, but not board of canvassers. The court held
that *mandamus* was properly directed to the board in its cor-
porate capacity. The object of the *mandamus* was to compel the
payment of an execution against the county. To the same effect
is *Stock Co.* v. *Smith,* 165 U. S. 28, 17 Sup. Ct. 225, 41 L. Ed.
621; *Thompson* v. *U. S.,* 103 U. S. 480, 26 L. Ed. 521. In High,
Extr. Rem. s. 38, it is said: "Where, however, a continuing and
perpetual duty is incumbent on certain public officers, it may be
enforced against their successors. Such is not the duty in this
case. It does not follow the office into the hands of a successor.

It is not transmissible. But it is a duty to be performed at a certain time, in a certain way, as an inseparable part of other duties to be performed at the same time, and by the same officers, as a personal duty in the canvass of an election, and one which the law that creates it and the office says he can be compelled to do, and punished for a willful omission thereof as a felon. In short, it is a mandatory personal duty, the willful neglect or omission of which is made a felony." Merrill, Mand. s. 238, is to the same effect. *People* v. *Supervisors of Barnett Tp.*, 100 Ill. 332, was a suit to compel the supervisors of a town to sign certain bonds in behalf of the town. This was undoubtedly a transmissible duty. So it may be said of the duty required in *Sheaff* v. *People*, 87 Ill. 189, and *Council of Village of Glencoe* v. *People*, 78 Ill. 382. *State* v. *Bailey*, 7 Clarke 390, tends, to sustain the affirmative moiety's position; but in that case, under the laws of Iowa, the duty devolved on the county judge, who had the authority to summon two justices of the peace to act as canvassers with him. During the progress of the canvass, one of them ceased to be a justice, and the court held that the county judge could call on another justice, and proceed with the canvass. Our election law is different, in that it fixes a certain canvassing board for each election, and requires the duties to be strictly and legally performed by them under the penalty of imprisonment, and provides necessary remedies to compel such performance. In Iowa the county judge is the only permanent member of the canvassing board. *State* v. *Judge of Marshall Co.*, 7 Clarke, 186. In the case of *U. S.* v. *Boutwell*, 17 Wall. 607, 21 L. Ed. 722, Justice Strong says: "But, no matter out of what facts or relations the duty has grown, what the law regards, and what it seeks to enforce by a writ of *mandamus*, is the personal obligation of the individual to whom it addresses the writ. If he be an officer, and the duty be an official one, still the writ is aimed exclusively against him as a person, and he only can be punished for disobedience. The writ does not reach the office." "It necessarily follows from this that, on the death or retirement from office of the original defendant, the writ must abate, in the absence of any statutory provision to the contrary. When the personal duty exists only so long as the office is held, the court cannot compel the defendant to perform it after his power to perform has ceased. And, if a successor in office may

be substituted, he may be mulcted in costs for the fault of his predecessor, without any delinquency of his own." The power of a canvasser under our election law never ceases until he has performed the duties thereof legally, and it is not right that the county court, as an agent of the public, should be mulcted in costs for the failure of a canvasser or canvassers to discharge their legal duties. The public are wronged, yet the public must pay the costs, because individual canvassers neglect their duties. In such case the duty and costs should both go together, and fall on the delinquent, and such undoubtedly was the intention of the legislature. To assess the county with the costs occasioned by the delinquency of election officers is an illegal outrage. No election officers are county officers, strictly speaking, and the county is in nowise responsible for their conduct. They are agents of the state, and not of the county; for they ascertain the result of the elections of all officers, from the governor to constable. The conclusion follows that the delinquent canvassers should be required to perform their neglected duties, notwithstanding they have ceased to be members of the county court: (1) Because the duties of all election officers are personal, and not transmissible to successors in office. They have no succession in office, within the meaning of the law; for when they have held, ascertained, and declared the result of an election in a legal manner they are *functus officio* as such officers, although they may be public officers in another capacity, and they are never *functus officio* as election officers until they have so discharged their duties. Public policy and interest both so forbid. (2) Their duties are all specified and made mandatory by law as agents of the state, and not of the county. (3) The willful disobedience or neglect of these duties is a felony punishable by confinement in the penitentiary. (4) The statute that defines these duties imposed on the courts the obligation to compel the officers on whom they are imposed, and not their successors in office, to perform them in a legal manner by *mandamus*. (5) The duty of recounting the ballots on demand, though ministerial, is imposed as an inseparable part of other duties on the canvassers, which last cannot be legally and fully performed until the first has been so performed. (6) The board of canvassers who canvassed the election after a recount are alone able to make up the necessary record, issue the certificates, and de-

clare the result, as required by statute. (7) The legislature never contemplated or made provision for any other result. It would be evidence of peculiar impotency, which surely is non-existent, for the legislature to make the non-performance of a specified duty a felony, and subject it to the control of peremptory *mandamus,* and yet permit the officer on whom it is en-joined to evade its legal performance by resignation or postpone-ment until his term in another office expired. Such a construc-tion of law is a perversion of justice, shocking to a sensitive moral nature. *Dent* v. *Board,* 45 W. Va. 750, (32 S. E. 250). (8) For this Court to so construe the law to the relief of a delin-quent state official, in the face of the plain requirements of the statute, is judicial legislation, and an evasion of the duty im-posed upon it to compel the election officers to do and perform their duties legally.

The intention of the law is too plain for cavil or doubt, and yet, if needs be, the legislature should so amend it as not to permit any election officer to become *functus officio* by his own evasion, act, or negligence until he has fully performed his speci-fied duties in a legal manner, and there should be left no loop-hole through which the wisdom of the judiciary may furnish him an avenue of escape by judicial construction. To the utmost of legislative power election officers should be removed from the temptation to fraudulent practices, neglect, or omission to per-form their duties legally. Our elections cannot be made abso-lutely pure, but they can, at least, have the legal semblance of purity by requiring from election officers strict performance of their duties in accordance with the law, and punishing them indi-vidually with the payment of costs, fine, or imprisonment for default on their part. Let no guilty officer escape. That which a man soweth, he ought also to reap. The judgment should be reversed, the county court in its corporate capacity released from costs and discharged from the *mandamus,* and the delinquent officers compelled to do and perform their duties legally, as the law is written.